UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

M.O., a minor, by and through his next friend, The Children's Rights Initiative, Inc.,

                              Plaintiff,

v.

SUSAN ORENDORF; NICHOLAS ORENDORF; ANTHONY ORENDORF; COUNTY OF ONONDAGA, NEW YORK; and JANE AND JOHN DOES, individually and as supervisors and employees of the Onondaga County Department of Social Services,

                              Defendants.

5:25-cv-00125 (BKS/TWD)

---

**Appearances:**

*For Plaintiff:*
A.J. Bosman
Robert J. Strum
Bosman Law Firm, LLC
3000 McConnellsville Road
Blossvale, New York 13308

*For Defendant County of Onondaga:*
Erin M. Welch Fair
Onondaga County Department of Law
John H. Mulroy Civic Center
421 Montgomery Street, 10th Floor
Syracuse, New York 13202

*Defendants Pro Se:*
Susan Orendorf
Nicholas Orendorf
Anthony Orendorf
Camillus, New York 13031

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.      INTRODUCTION**

Plaintiff M.O. is a 13-year-old child. He brings this 42 U.S.C. § 1983 and state law action through his next friend—the Children's Rights Initiative, Inc. ("CRI")—against Defendants Susan Orendorf, Nicholas Orendorf, and Anthony Orendorf, as well as the County of Onondaga, New York and employees of its Department of Social Services ("DSS"). (Dkt. No. 1). Presently before the Court is the County's motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 17(c), challenging CRI's ability to serve as next friend. (Dkt. No. 16). The motion is fully briefed. (Dkt. Nos. 16-1, 24-3, 25). For the reasons that follow, the motion is denied.

**II.     FACTS[1]**

Plaintiff, a 13-year-old child in DSS custody, currently lives in a Syracuse, New York foster home with a family selected by DSS. (Dkt. No. 1, ¶ 4; Dkt. No. 24, ¶ 8). He previously resided in Camillus with his former foster mother, Susan Orendorf, who adopted Plaintiff and his sister in 2018. (Dkt. No. 1, ¶¶ 5, 11–14). Nicholas and Anthony Orendorf are Susan's adopted sons who lived with Plaintiff and his sister in Susan's home. (*Id.* ¶¶ 6–7, 13). This action stems from Susan's, Nicholas's, and Anthony's alleged "verbal, psychological, emotional, and physical abuse, mistreatment, and neglect" of Plaintiff. (*Id.* ¶ 15). Plaintiff alleges that the County and DSS employees "knew or should have known of" the abuse from "multiple reports from the public, educators, and care providers." (*Id.* ¶ 20).

Because Plaintiff is a minor, he brings this action through CRI as his next friend. (*See id.* ¶ 4). CRI "is a 501(c)(3) not-for-profit legal services corporation [which] provides legal services

---

[1] The facts are drawn from the complaint, as well as affirmations and exhibits submitted by Plaintiff's counsel in opposition to the County's motion. (*See* Dkt. Nos. 1, 24, 24-1, 24-2, 30).

2

to children without charge," endeavoring "to promote and defend the legal rights of children whose claims or rights may otherwise go unaddressed for lack of funds or willing attorneys." (Dkt. No. 24, ¶¶ 3, 6; *see also* Dkt. Nos. 24-1, 24-2). "CRI is the only organization that provides such representation to indigent children in this region," and "[m]any, if not most, of [its] clientele have been or would be unable to secure any alternative legal representation." (Dkt. No. 24, ¶ 14). CRI has existed "since 1997 and has represented minors as 'next friend' as far back as that time" in state and federal courts throughout New York. (*Id.* ¶ 7 (citing cases)).

Attorney A.J. Bosman, Plaintiff's counsel, is CRI's founder and executive director. (*Id.* ¶ 1). She avers that she has met "multiple times" with Plaintiff, who has "retained CRI to prosecute this civil action," and with "his former . . . Attorney for the Child" appointed by a New York family court. (*See id.* ¶ 8). According to Bosman, "Plaintiff has no parent or guardian who can bring suit." (*Id.* ¶ 10). Although "he is presently in [DSS] custody," the County cannot bring suit on Plaintiff's behalf because it is a named defendant. (*Id.*).

Bosman explains that "any and all compensation received in this matter [will be] paid to CRI," which "funds litigation expenses and costs through contingency fees and fee awards." (*Id.* ¶ 13). As part of these expenses and costs—consistent with its certificate of incorporation, (*see* Dkt. No. 24-1, at 4)—CRI "compensat[es] individuals for services rendered, including" attorneys like Robert Strum, who has also appeared for Plaintiff in this action. (Dkt. No. 30, ¶¶ 3, 5). But "[s]uch compensation never exceeds the reasonable value of the services provided," and "[n]either Mr. Strum, nor any other payee of CRI, maintain[s] any direct interest in any contingency fee or fee award." (*Id.* ¶¶ 5–6). Bosman receives no "compensation or salary" for any of her services to CRI, either as its executive director or as an attorney litigating cases in which CRI participates. (*See id.* ¶¶ 4–5). She "will not be paid any portion of a contingency fee

3

or fee award in this or any other of CRI's matters." (*Id.*). CRI does not require "any child or their guardian to outlay money for fees, costs, or other expenses," nor does it "seek reimbursement for such expenses in the event litigation is unsuccessful." (Dkt. No. 24, ¶ 13).

### III.  STANDARD OF REVIEW

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). The court may also "refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113; *see also APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003).

Rule 17(c) empowers district courts to authorize a minor without "a duly appointed representative [to] sue by a next friend." *See* Fed. R. Civ. P. 17(c)(2). The rule is "permissive and not mandatory." *Ad Hoc Comm. of Concerned Tchrs. v. Greenburgh #11 Union Free Sch. Dist.*, 873 F.2d 25, 29 (2d Cir. 1989) ("*Greenburgh*"). Whether a court should exercise this discretion depends on "the facts and circumstances of each case." *Id.* at 31. So in making that determination, the court must "conduct an inquiry"—during which it may consider evidence outside the pleadings—"into the application of any adult or group of adults seeking to represent a child's interests as 'next friend.'" *See id.* at 29, 31; *see also S.M. by King v. City of New York*, No. 20-CV-5164, 2023 WL 2691454, at *2, 6–7, 2023 U.S. Dist. LEXIS 54400, at *5, 19–20 (S.D.N.Y. Mar. 29, 2023) (considering attorney declaration in determining whether a conflict of interest prohibited a proposed next friend from serving under Rule 17(c)).

4

## IV.     DISCUSSION

The parties advance various arguments concerning CRI's ability to serve as next friend, some which implicate CRI's next friend standing, and others which implicate Rule 17(c). (*See generally* Dkt. Nos. 16-1, 24-3, 25). The Court addresses each in turn.

### A.     Next Friend Standing

"Under Article III of the U.S. Constitution, 'the judicial Power of the United States' extends only to certain 'Cases' and 'Controversies.'" *Lacewell v. Off. of Comptroller of Currency*, 999 F.3d 130, 141 (2d Cir. 2021) (alteration adopted) (quoting U.S. Const. art. III, §§ 1–2). Thus, plaintiffs must have "[s]tanding to sue." *See, e.g.*, *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "Typically, a plaintiff will have standing only to 'assert his or her own legal rights and interests' and may not 'rest a claim to relief on the legal rights or interests' of others." *Doe v. Hochul*, 139 F.4th 165, 177 (2d Cir. 2025) (quoting *Powers v. Ohio*, 499 U.S. 400, 410 (1991)); *Sessions v. Morales-Santana*, 582 U.S. 47, 57 (2017).

One "narrow exception[]" to this general principle, however, is a court's "authority to appoint a 'next friend' who may bring claims on behalf of a minor." *Doe*, 139 F.4th at 177 (citing *Whitmore v. Arkansas*, 495 U.S. 149, 161–62 (1990)). But not "just anyone may assume the mantle of next friend." *Id.* As the Supreme Court explained in *Whitmore v. Arkansas*, "there are 'at least two firmly rooted prerequisites for "next friend" standing.'" *Id.* (quoting *Whitmore*, 495 U.S. at 163); *see also Muthana v. Pompeo*, 985 F.3d 893, 901–02 (D.C. Cir. 2021). First, the proposed next friend "must provide an adequate explanation—such as inaccessibility, mental incompetence, or other disability—why the real party in interest cannot appear on his own behalf to prosecute the action." *Doe*, 139 F.4th at 177 (quoting *Whitmore*, 495 U.S. at 163); *see also A.H. by E.H. v. N.Y. State Dep't of Health*, 147 F.4th 270, 277 n.3 (2d Cir. 2025). Second, they "must be truly dedicated to the best interests of the person on whose behalf" they seek to litigate.

5

*Doe*, 139 F.4th at 177 (quoting *Whitmore*, 495 U.S. at 163); *see also Ford v. Haley*, 195 F.3d 603, 624 (11th Cir. 1999).

"Although a significant relationship with the real party in interest is *relevant* to the appointment of a next friend, it is neither required nor dispositive." *Doe*, 139 F.4th at 178.

> [W]hen the real party lacks any "close relative" or friend that can act on his or her behalf . . . , another person can assume the mantle of next friend, provided the person can "show some relationship or other evidence that would suggest [that] the next friend is truly dedicated to the interests of the real party."

*Id.* at 179 (first quoting *Muthana*, 985 F.3d at 902; then quoting *Lonchar v. Zant*, 978 F.2d 637, 641 (11th Cir. 1992) (per curiam)). Still, a proposed next friend with "little or no relationship with the real party in interest . . . should be viewed skeptically—as the lack of any relationship may belie the next friend's claim that she is advancing the real party's best interests." *Id.*

Here, the Court concludes that CRI has next friend standing under *Whitmore*. The County does not dispute that, as a minor, Plaintiff cannot appear on his own behalf under New York law. *See* N.Y. C.P.L.R. § 1201; *see also Neilson v. Colgate-Palmolive Co.*, 199 F.3d 642, 656 (2d Cir. 1999) (explaining that, under Rule 17(b), a person's capacity to sue is determined by the law of their domicile). CRI has therefore provided an "adequate explanation" for why Plaintiff, the real party in interest, cannot appear on his own behalf.[2] *See Whitmore*, 495 U.S. at 163.

The County argues, however, that CRI has not established its "dedicat[ion] to [Plaintiff's] best interests," (Dkt. No. 16-1, at 8–9). *See Whitmore*, 495 U.S. at 163. The Court disagrees. Bosman explains that CRI's sole purpose is "to promote and defend the legal rights of children whose claims or rights may otherwise go unaddressed for lack of funds or willing attorneys."

---

[2] The County contests the first *Whitmore* prerequisite by arguing that "[t]he complaint fails to allege [that] the child is unrepresented." (*See* Dkt. No. 16-1, at 7–8). However, this argument, which the Court addresses below, implicates CRI's ability to appear on Plaintiff's behalf, not whether Plaintiff—the real party in interest—"can[] appear on his own behalf to prosecute the action." *Whitmore*, 495 U.S. at 163.

6

(Dkt. No. 24, ¶ 3). Thus, CRI's interest in this action is not "merely philosophical" or "abstract," as the County contends, but rather to advance Plaintiff's rights. (Dkt. No. 16-1, at 8). Bosman confirms that she has met with Plaintiff "multiple times," met his former family court attorney, and that Plaintiff wishes CRI to represent him in this action. (*See* Dkt. No. 24, ¶ 8 (explaining that Plaintiff has "retained CRI to prosecute this civil action")). Additionally, CRI and Bosman have considerable experience litigating similar cases. (*Id.* ¶¶ 7, 14 (collecting cases)).

Under these circumstances, the Court concludes that CRI has shown that it is truly dedicated to the best interests of M.O. *Cf. Sam M. ex rel. Elliott v. Carcieri*, 608 F.3d 77, 92 (1st Cir. 2010) (explaining that, in conducting the best interests inquiry, "courts may consider the [proposed next friend's] familiarity with the litigation, the reasons that move [them] to pursue the litigation, and [their] ability to pursue the case on the child's behalf"). To be sure, as the County notes, CRI lacks a longstanding or otherwise significant "relationship" with Plaintiff. (*See* Dkt. No. 16-1, at 8). But "the Supreme Court stopped short of adopting a 'significant relationship' requirement in *Whitmore*."[3] *Doe*, 139 F.4th at 179 (quoting *Whitmore*, 495 U.S. at 163–64). Nothing here suggests that the absence of such a relationship "belie[s]" CRI's assertion that it is "advancing [Plaintiff's] best interests"—especially because, as explained below, Plaintiff "lacks [a] 'close relative' or [other] friend that can act on his" behalf. *Id.* (quoting *Muthana*, 985 F.3d at 902); *cf. Coal. of Clergy, Laws., & Professors v. Bush*, 310 F.3d 1153, 1162 (9th Cir. 2002) ("The existence of some relationship, whether it be from authorized representation to friendship or alliance to familial, serves as an objective basis for discerning the 'intruder' or 'uninvited meddler' from the true 'next friend.'").

---

[3] Such a relationship is also not required by Rule 17(c), which the Court discusses below. *Doe*, 139 F.4th at 179.

7

Therefore, the Court concludes that CRI has standing under *Whitmore* to proceed as Plaintiff's next friend.

B.      **Rule 17(c)**

Under Rule 17(c)(2), courts may "authorize someone other than a lawful representative to sue on behalf of an infant . . . where that representative is unable, unwilling or refuses to act or has interests which conflict with those of the infant." *Greenburgh*, 873 F.2d at 29; *see also T.W. by Enk v. Brophy*, 124 F.3d 893, 895–96 (7th Cir. 1997). Additionally, a district court must assure itself of any proposed next friend's "good faith" and "explore the ability of the 'next friend'—financial or otherwise—to prosecute the type of action at hand." *Greenburgh*, 873 F.2d at 30–31; *S.M. by King*, 2023 WL 2691454, at *4, 2023 U.S. Dist. LEXIS 54400, at *12–13. Next friends may not "assert the legitimate rights of children as a mere pretext for advancing ulterior political or economic aims"; nor may they proceed if, "despite their good intentions, [they] find themselves unable to finish what they start."[4] *Greenburgh*, 873 F.2d at 31.

The Court concludes here that CRI may proceed as Plaintiff's next friend under Rule 17(c). First, Plaintiff has shown that the appointment of a next friend is appropriate because his "authorized representative . . . has interests which conflict with" his own. *Greenburgh*, 873 F.2d at 30; *see also von Bulow by Auersperg v. von Bulow*, 634 F. Supp. 1284, 1292–93 (S.D.N.Y. 1986) (Walker, J.) (collecting cases). He is currently in DSS's "legal custody," (Dkt. No. 24, ¶ 8), and all the named defendants, including the County, have interests conflicting with Plaintiff's. The County provides no support for its speculative suggestion that "past [or] current caregivers" could adequately serve as Plaintiff's next friend. (Dkt. No. 16-1, at 8). Nor did it

---

[4] The Second Circuit has suggested that the *Whitmore*'s "prerequisites for 'next friend' standing," 495 U.S. at 163, are also part of the "requirements . . . under Rule 17(c)," *Doe*, 139 F.4th at 178 n.2. To the extent these elements are part of the Rule 17(c) analysis, they are met for the reasons given above.

8

respond to Bosman's first affirmation in opposition to its motion stating that "Plaintiff has no parent or [other] guardian who can bring suit." (Dkt. No. 24, ¶ 10).

Alternatively, the County asserts that "[g]iven the pleadings and [Bosman's] affirmation attached to the opposition papers, [Plaintiff] has an active attorney" in his family court matter who may "request [that] a guardian ad litem be appointed" under New York law. (Dkt. No. 25, at 6 (citing Dkt. No. 24, ¶ 8); *see also* Dkt. No. 16-1, at 8). But Bosman's affirmation states that Plaintiff has a "*former* court-appointed" attorney. (Dkt. No. 24, ¶ 8 (emphasis added)). And even were that attorney still representing Plaintiff, the County points to no authority for the state court to appoint a guardian ad litem in this federal action.[5] Without any others to serve as next friend, Plaintiff has established his need for CRI to fill the role. *See Greenburgh*, 873 F.2d at 31 ("The right of access to courts by those who feel they are aggrieved should not be curtailed; and this is particularly so in the instance of children who . . . attribute such grievances to their very custodians." (quoting *Child v. Beame*, 412 F. Supp. 593, 599 (S.D.N.Y. 1976))).

Second, the Court is satisfied that CRI proceeds in "good faith," "motivated by a sincere desire to seek justice on [Plaintiff's] behalf." *Id.* at 30–31. In light of the above best interests discussion, nothing suggests that CRI is attempting to assert Plaintiff's rights "as a mere pretext for advancing ulterior political or economic aims." *Id.* at 31; *see also Child*, 412 F. Supp. at 599.

Finally, the Court sees no reason to question CRI's "financial" ability to prosecute this action, nor its ability to otherwise "finish what [it] start[ed]." *Greenburgh*, 873 F.2d at 31. However, the County argues that CRI has a conflict of interest preventing it from serving as

---

[5] The County cites only the New York statute authorizing the appointment of guardians ad litem. (*See* Dkt. No. 25, at 6). But that statute's text provides for appointment by "[t]he court in which an action is triable." N.Y. C.P.L.R. 1202(a). So it does not appear to confer a state court with authority to appoint a guardian ad litem in an action "triable" in federal court. *See id.*; *cf. Wang v. James*, 40 N.Y.3d 497, 502–03 (2023) (noting that New York courts' "starting point in any case of [state statutory] interpretation must always be the language of the statute itself" (cleaned up)).

Plaintiff's next friend. (Dkt. No. 16-1, at 9; Dkt. No. 25, at 4–6). Bosman, it contends, improperly serves "as both the attorney of record and, as founder and Executive Director of [CRI], as 'next friend.'" (Dkt. No. 25, at 4, 5). The County asserts that this configuration, together with the request for attorney's fees, "sets up" a "potential conflict," (*see* Dkt. No. 16-1, at 9); and that Bosman, through CRI, could "make all decisions regarding litigation," putting her at odds with Plaintiff's interests, (Dkt. No. 25, at 6).

The Court rejects these arguments. Plaintiff's request for attorney's fees alone creates no conflict at this stage. Bosman confirms that "any and all compensation received in this matter [will be] paid to CRI," a not-for-profit corporation which uses "contingency fees and fee awards" to pay only "litigation expenses and costs." (Dkt. No. 24, ¶¶ 3, 13; *see also* Dkt. Nos. 24-1, 24-2). Bosman herself will receive no part of any fee or award. (Dkt. No. 30, ¶¶ 4–5). And Strum will receive compensation only for "the reasonable value of the services" he provides, so neither he, "nor any other payee of CRI, [has] any direct interest in a contingency fee or fee award," (*id.* ¶¶ 5–6). *Cf. Brown v. Gen. Motors Corp.*, 722 F.2d 1009, 1011 (2d Cir. 1983) ("Under [42 U.S.C. § 1988] it is the prevailing party rather than the lawyer who is entitled to attorney's fees."). CRI has also not required Plaintiff "to outlay money for fees, costs, or other expenses," nor will it "seek reimbursement for such expenses in the event litigation is unsuccessful." (Dkt. No. 24, ¶ 13). Ultimately, the Court will have to approve any settlement on behalf of Plaintiff including any award of fees or costs. *See* L.R. 17.1.

As to any other potential conflict, even assuming Bosman and CRI are effectively "one in the same," this would not be "unprecedented," as the County asserts. (Dkt. No. 25, at 4). Judge Posner, for example, has noted that "it is common for a child's lawyer to be named . . . as the child's next friend." *T.W. by Enk*, 124 F.3d at 896. And the Sixth Circuit has called the practice

"not . . . at all improper." *See Noe v. True*, 507 F.2d 9, 12 (6th Cir. 1974) (per curiam). The Second Circuit does not appear to have explicitly addressed the issue in the context of a minor plaintiff, but it has suggested in dictum that the practice would be permissible. *See Berrios v. N.Y.C. Hous. Auth.*, 564 F.3d 130, 135 (2d Cir. 2009) (stating that "unless [a minor] claimant is properly represented by a guardian ad litem [or] *next friend*, . . . *and that representative* either *is*, or is represented by, *an attorney*, the court should not issue a ruling as to whether the complaint states a claim" (emphasis added)); *see also Davis v. Davis*, No. 21-2308, 2022 WL 19571172, at *1, 2022 U.S. App. LEXIS 37540, at *1–2 (2d Cir. Feb. 9, 2022) (remanding for district court to consider "appoint[ing] a guardian who 'secures an attorney or is an attorney'" (quoting *Berrios*, 564 F.3d at 135)). It has also cited approvingly the Sixth Circuit's *Noe* decision as an example of a conflict of interest between a child and representative requiring the appointment of a guardian ad litem. *Greenburgh*, 873 F.2d at 30 (citing *Noe*, 507 F.2d at 9).

To be sure, some courts have questioned the practice, cautioning that it "is not always prudent"—but even those courts did not conclude that is never permissible. *See Gardner by Gardner v. Parson*, 874 F.2d 131, 140 n.14 (3d Cir. 1989); *see also Mondelli v. Berkeley Heights Nursing & Rehab. Ctr.*, 1 F.4th 145, 150 & n.7 (3d Cir. 2021). Given Bosman's experience, the Court expects that she and CRI will not "fail to distinguish between the two roles." *Gardner*, 874 F.2d at 140 n.14; *cf. Bowen v. Rubin*, 213 F. Supp. 2d 220, 226 (E.D.N.Y. 2001) (presuming that "the proposed guardians, being attorneys, [understood] their fiduciary obligations to plaintiffs and their roles as officers of the Court"). The County points to no other specific circumstance—and the Court has discerned none—which might "involve [Bosman] in representing differing interests," or risk her "professional judgment [becoming] adversely affected by [her or CRI's]

own financial, business, property or other personal interests." *See* N.Y. Rules of Pro. Conduct r. 1.7(a). Thus, there is no conflict inhibiting CRI's ability to serve as next friend.

In sum, the Court concludes that CRI may proceed in this action as M.O.'s next friend. Having considered the documents submitted with Plaintiff's opposition and solicited a supplemental affirmation from Bosman, (*see* Dkt. No. 29), the Court need not conduct any further inquiry at this stage. *See Greenburgh*, 873 F.2d at 31. However, should a conflict or other circumstance arise which impairs CRI's ability to serve as next friend, the Court will revisit the issue at that time. *Cf. Neilson*, 199 F.3d at 652 (noting district courts' "continuing obligation to supervise [a] guardian ad litem's work").

### V.   CONCLUSION

For these reasons, it is hereby

**ORDERED** that the County's motion to dismiss (Dkt. No. 16) is **DENIED**; and it is further

**ORDERED** that the Clerk serve a copy of this Order on Defendants Susan Orendorf, Nicholas Orendorf, and Anthony Orendorf in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: November 6, 2025
       Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge